Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| DEPARTAMENTO DE LA FAMILIA  Recurrido  v.  SERVIDORES PUBLICOS UNIDOS DE PUERTO RICO  Recurrente  COMISIÓN APELATIVA DEL SERVICIO PÚBLICO  Organismo Revisado | TA2025CE00500 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan  Civil núm.: SJ2020CV4478  Sobre: Revisión de Laudo de Arbitraje Obrero Patronal Núm. L-20-061 para los casos consolidados núm. AQ-16- 0284 y AQ-16-0286, emitido por la Comisión del Servicio Público |
|---|---|---|

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# RESOLUCIÓN

En San Juan, Puerto Rico, a 9 de octubre de 2025.

Comparece la parte peticionaria, Servidores Públicos Unidos de Puerto Rico, mediante un recurso de *certiorari* y nos solicita que revoquemos la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 29 de julio de 2025. Mediante dicho dictamen, el foro primario declaró Ha Lugar la petición de revisión judicial de laudo de arbitraje instada por la parte recurrida, Departamento de la Familia. En su consecuencia, anuló el laudo de arbitraje número L-20-061.

Por los fundamentos que exponemos a continuación, se deniega la expedición del auto solicitado.

**I**

El 21 de agosto de 2020, el Departamento de la Familia (Agencia o recurrida) instó una *Petición de Revisión de Laudo de Arbitraje,* mediante la cual solicitó la revisión del Laudo Número L-20-061 (Laudo), emitido por la Comisión Apelativa del Servicio Público (CASP) el 17 de julio de 2020, notificada el día 23 del mismo mes y año.[1] En síntesis, la árbitro resolvió que procedía el pago por concepto de un diferencial por condiciones extraordinarias, por el tiempo en que Melissa Smart Morales (Smart Morales) y Sandra A. De Jesús Otero (De Jesús Otero) (querellantes) realizaron funciones de coordinadoras de manejo de emergencias.

Argumentó que la *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico,* Ley Núm. 66-2014, según enmendada, 3 LPRA sec. 9101 *et seq.* (Ley Núm. 66-2014), disponía que no se concedería compensación monetaria extraordinaria a las personas empleadas de las Entidades de la Rama Ejecutiva, incluyendo el pago de diferencial en salario por condiciones extraordinarias, debido a la crisis fiscal que enfrentaba el país. Según adujo, la Oficina de Gerencia y Presupuesto (OGP) había denegado originalmente la solicitud para el pago del diferencial a las querellantes a base de consideraciones presupuestarias, fiscales y económicas. Sobre ese particular, resaltó que, según el precitado estatuto, la OGP era quien tenía la facultad para evaluar, aprobar o rechazar peticiones en el renglón de los traslados, destaques y diferenciales, entre otros.

La Agencia sostuvo en su acción que el acuerdo, suscrito entre el Gobierno del Estado Libre Asociado de Puerto Rico y los Trabajadores Públicos del Gobierno Central, representados por los Servidores Públicos Unidos de Puerto Rico (SPUPR o peticionarios),

---

[1] Entrada Núm. 1 del Caso Núm. SJ2020CV04478 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

privó a la CASP de jurisdicción sobre determinaciones relativas a la viabilidad fiscal y económica de las disposiciones acordadas.[2] Argumentó, además, que la única forma en que podía conceder el pago del diferencial era con la autorización expresa de la OGP, quien denegó las mismas. En virtud de ello, solicitó la revocación del Laudo, por entender que el foro con jurisdicción era la OGP y porque había cumplido con las disposiciones y cláusulas del Convenio Colectivo suscrito entre las partes, así como con el derecho aplicable.

En la alternativa, expresó que, al emitirse un laudo favorable para la parte querellante —que podría generar una reclamación de desembolso de fondos a favor de esta—, lo que procedía era incluirlo como una de las deudas reclamadas en la petición de quiebra presentada por el Gobierno del Estado Libre Asociado de Puerto Rico. Planteó que, como único las querellantes podían recibir el pago en cuestión, era que la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (AAFAF) generara una comunicación escrita informando a la Unión que estaba en posición de pagar lo adeudado.

Por su parte, el 9 de diciembre de 2020, los SPUPR presentaron su oposición al recurso de revisión judicial.[3] En esencia, argumentaron que la Ley Núm. 66-2014, *supra*, no aplicaba al caso de autos, toda vez que esta fue aprobada con posterioridad a que surgiera el derecho de las querellantes de reclamar el diferencial en cuestión, y no era de aplicación retroactiva. En cuanto al acuerdo, señalaron que habían acordado que las disposiciones sobre la concesión de aumentos de beneficios económicos o compensación monetaria extraordinaria dispuestas en el Artículo 11 de la Ley Núm. 66-2014, 3 LPRA sec. 9117, no le aplicaban. Plantearon que, en una carta circular emitida por la OGP, se dispuso

---

[2] Anejo X en la Entrada Núm. 1 del Caso Núm. SJ2022CV04478 en el SUMAC.
[3] Entrada Núm. 6 del Caso Núm. SJ2020CV04478 en el SUMAC.

que, aquellas personas empleadas unionadas que pertenecieran a sindicatos que hayan adoptado y ratificado estipulaciones, quedarían exentas de la totalidad de lo dispuesto en el precitado artículo y que prevalecería lo establecido en las estipulaciones acordadas.

Por otro lado, los SPUPR argumentaron que la CASP no tenía jurisdicción en cuanto a aumentos, nombramientos o pago de bonos, por la cantidad considerable que implicaría la concesión de estos, mas no así las reclamaciones de personas unionadas sobre derechos ya adquiridos. Sostuvieron que, al proveerle a la OGP la identificación de partidas y fondos de donde pagar el diferencial, no se justificaba la negativa por "viabilidad fiscal". En vista de ello, solicitaron que se declarara No Ha Lugar la solicitud de la Agencia y que, en su consecuencia, se confirmara el Laudo emitido por la CASP.

Luego de varios trámites procesales, el 29 de julio de 2025, el Tribunal de Primera Instancia emitió y notificó la *Sentencia* que nos ocupa.[4] Mediante dicho dictamen, el foro primario declaró Ha Lugar la petición de revisión judicial de laudo de arbitraje promovida por la Agencia. En consecuencia, anuló el Laudo. En particular, el foro sentenciador expresó que la denegatoria de la OGP, basada en criterios de disponibilidad presupuestaria y en conformidad con normas y reglamentos vigentes, son parte de sus atribuciones legales exclusivas, y no constituyen un acto adjudicable por la CASP. Concluyó que la determinación impugnada excedió el ámbito de jurisdicción conferido por la ley a la CASP.

Inconforme, el 24 de septiembre de 2025, la parte peticionaria presentó el recurso de epígrafe y señaló el siguiente error:

> Erró en derecho el Honorable Tribunal de Primera Instancia al revocar la determinación de la CASP, aduciendo que dicho foro no tenía jurisdicción para

---

[4] Entrada Núm. 16 del Caso Núm. SJ2020CV04478 en el SUMAC.

resolver la controversia ante su consideración en virtud de las disposiciones de la Ley [Núm.] 66-2014 e impartirle retroactividad a dicha legislación.

En cumplimiento con nuestra *Resolución* del 26 de septiembre de 2025, la parte recurrida compareció ante nos mediante *Escrito en cumplimiento de Resolución* el 6 de octubre del año corriente.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

## A

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A)   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)   Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

Por otro lado, en cuanto a una solicitud de revisión de un laudo de arbitraje del Tribunal de Primera Instancia, la Regla 32 (c) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 56, 215 DPR __ (2025), dispone que,

> (C) El recurso de *certiorari* para revisar cualquier otra resolución, orden o dictamen revisable por esta vía de conformidad con la ley, incluida una orden de protección, así como revisar una sentencia final producto de una solicitud de revisión de un laudo de arbitraje del Tribunal de Primera Instancia se formalizará mediante la presentación de una solicitud dentro de los treinta días siguientes a la fecha del archivo en autos de una copia de la notificación de la resolución u orden recurrida, a menos que alguna ley especial aplicable disponga un término distinto. Este término es de cumplimiento estricto.

**B**

En nuestro ordenamiento jurídico, las relaciones obrero-patronales, la negociación colectiva y los procedimientos de arbitraje están vinculados al desarrollo económico, a la paz industrial y, por ende, a la consecución de los intereses públicos. *C.O.P.R. v. S.P.U.*, 181 DPR 299, 319 (2011). Específicamente, el arbitraje está considerado como un método alterno a la intervención judicial para la solución de conflictos. *Íd.*, pág. 362. Cónsono con lo anterior, en Puerto Rico existe una vigorosa política pública a favor del arbitraje obrero-patronal. Así, pues, se entiende que el arbitraje es el medio menos técnico, más flexible, menos oneroso y, por tanto, más apropiado para la resolución de las controversias que emanan de la relación laboral. *Martínez Rodríguez v. A.E.E.*, 133 DPR 986 (1993).

Ahora bien, el arbitraje es un procedimiento de poderes delegados y mediante el convenio colectivo se le confiere la autoridad al árbitro para que evalúe y resuelva las controversias que allí se especifican. A. Acevedo Colom, *Legislación protectora del trabajo comentada*, 8va ed. Rev., Puerto Rico, Ed. Ramallo Printing Bros., 2005, pág. 393. Referente al proceso de arbitraje, el laudo representa la determinación que toma el árbitro respecto a la

controversia laboral. *C.O.P.R. v. S.P.U.*, supra, pág. 368. Se ha establecido que el laudo de arbitraje no es ni un contrato ni una sentencia, pero disfruta de la naturaleza de ambos. *Íd.*, pág. 328.

Con relación a la revisión judicial de los procesos de arbitraje, nuestro más Alto Foro ha expresado que, aunque la intervención no esté vedada, ante un convenio de arbitraje lo más prudente es la abstención judicial. *U.C.P.R. v. Triangle Engineering Corp.*, 136 DPR 133 (1994). Por ello, cuando se acuerda el uso del arbitraje como mecanismo para ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia. *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 DPR 318 (1988); *López v. Destilería Serrallés*, 90 DPR 245 (1964). Por tal razón, la revisión de los laudos de arbitraje se circunscribe al determinar: (1) la existencia de fraude; (2) conducta impropia; (3) falta del debido proceso de ley; (4) violación a la política pública; (5) falta de jurisdicción; o (6) que el laudo no resuelve todos los asuntos en controversia. *C.O.P.R. v. S.P.U.*, supra, pág. 319.

No obstante, si las partes pactan que el laudo arbitral sea conforme a derecho, los tribunales podrán corregir errores jurídicos en atención al derecho aplicable. Ello significa que el árbitro no puede ignorar o dejar pasar por desapercibidas las normas interpretativas, en el campo laboral, de derecho sustantivo emitidas por la Corte Suprema de los Estados Unidos y por el Tribunal Supremo de Puerto Rico. *J.R.T. v. Hato Rey Psychiatric Hosp.*, 119 DPR 62, 68 (1987).

De igual modo, las decisiones de los tribunales de primera instancia, de las agencias administrativas y los laudos arbitrales se reputarán persuasivas. *J.R.T. v. Hato Rey Psychiatric Hosp.*, supra. En tal supuesto, la revisión judicial de los laudos de arbitraje es análoga a la revisión judicial de las decisiones administrativas. *Condado Plaza v. Asoc. Emp. Casinos P.R.*, 149 DPR 347 (1999);

*Rivera v. Dir. Adm. Trib.*, 144 DPR 808, 821-822 (1998); *U.C.P.R. v. Triangle Engineering Corp.*, supra. Sin embargo, nuestro Tribunal Supremo ha aclarado que la intervención judicial no se justifica por una mera discrepancia de criterio con el árbitro, ya que se destruiría la esencia de los procesos de arbitraje. *UGT v. Hima San Pablo Caguas*, 202 DPR 917, 929 (2019). Por lo tanto, es la norma que los foros judiciales apelativos tendrán la autoridad para revisar todas las cuestiones de derecho sustantivo resueltas por el árbitro para poder determinar si son correctas. *C.O.P.R. v. S.P.U.,* supra, pág. 370. Es decir, procede la anulación del laudo solo si no se ha resuelto la controversia conforme a derecho. *Íd.*

**C**

Por otro lado, la *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico,* Ley Núm. 66-2014, según enmendada, 3 LPRA sec. 9101 *et seq.* (Ley Núm. 66-2014), fue promulgada a los fines de declarar un estado de emergencia fiscal en el gobierno y adoptar un plan para manejar las consecuencias de la crisis fiscal y económica que atraviesa el país.

La legislación precitada incluyó, entre otras cosas, una serie de disposiciones como parte de las medidas de reducción de gastos en la Rama Ejecutiva, que aplican a las corporaciones públicas. Es por ello que nuestro cuerpo de Legisladores dispuso que este estatuto tendrá primacía sobre cualquier otra. Art.3 de la Ley Núm. 66-2014, 3 LPRA sec. 9102.

Ahora bien, entre las medidas adoptadas para tratar la crisis fiscal del país, se encuentra la no concesión de beneficios económicos ni compensación monetaria extraordinaria a las personas empleadas de la Entidades de la Rama Ejecutiva desde y durante la vigencia de la Ley Núm. 66-2014, *supra.* Art. 11, inciso (a), de la Ley Núm. 66-2014, 3 LPRA sec. 9117. En lo aquí atinente, la referida ley dispone que se considerará como aumento en

beneficios económicos los pagos de diferencial en salario por condiciones extraordinarias o por interinatos. *Íd.*, inciso (b)(vii).

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte peticionaria plantea en su único señalamiento de error que el Tribunal de Primera Instancia incidió al revocar la determinación de la CASP, aduciendo que dicho foro no tenía jurisdicción para resolver la controversia ante su consideración y al impartirle retroactividad a la Ley Núm. 66-2014, *supra.*

Hemos evaluado el recurso de epígrafe conforme exige la normativa antes expuesta, con particular atención a la jurisdicción que tiene la CASP para atender determinaciones relativas a la viabilidad fiscal y económica, por lo que estamos en posición de resolver.

Luego de un examen sosegado del expediente ante nos, colegimos que no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el Tribunal de Primera Instancia. Al entender sobre los planteamientos que la parte peticionaria propone ante este Foro, concluimos que la sala de origen no incurrió en error de derecho ni en abuso de discreción al declarar Ha Lugar la petición de revisión judicial de laudo de arbitraje promovida por la Agencia recurrida, ello a fin de que podamos soslayar la norma de abstención judicial que, en dictámenes como el de autos, regula el ejercicio de nuestras funciones.

Al evaluar los documentos que obran en autos, concluimos que nuestra intervención no resulta oportuna. Siendo así, y en ausencia de prueba que nos permita resolver en contrario, denegamos expedir el auto de *certiorari* que nos ocupa, al amparo de lo dispuesto en la Regla 40 de nuestro Reglamento, *supra.*

**IV**

Por los fundamentos que anteceden, denegamos la expedición del recurso de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones